O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUIK BAGDOYAN, | ) Case No. CV 12-5312 RNB |
| Plaintiff, | ) |
| | ) |
| vs. | ) ORDER REVERSING DECISION OF |
| | ) COMMISSIONER AND REMANDING |
| CAROLYN W. COLVIN, Acting | ) FOR FURTHER ADMINISTRATIVE |
| Commissioner of Social | ) PROCEEDINGS |
| Security,[1] | ) |
| Defendant. | ) |
| | ) |

The Court now rules as follows with respect to the four disputed issues listed in the Joint Stipulation.[2]

---

[1]    The Acting Commissioner is hereby substituted as the defendant pursuant to Fed. R. Civ. P. 25(d).  No further action is needed to continue this case by reason of the last sentence of 42 U.S.C. § 405(g).

[2]    As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined
(continued...)

1

1    **A.      Reversal is not warranted based on the ALJ's alleged failure to make a**
2    **proper step three determination (Disputed Issue No. 1).**

3         Disputed Issue No. 1 is directed to the ALJ's determination at step three of the

4    Commissioner's sequential evaluation process that plaintiff's degenerative disc

5    disease of the lumbar spine did not meet or equal the requirements of Listing 1.04

6    (Disorders of the Spine).  (See Jt Stip at 4-5.)

7         At step three of the sequential evaluation process, the ALJ must determine

8    whether a claimant's impairment or combination of impairments meets or equals a

9    listed impairment set out in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Tackett

10   v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).  To "meet" a listed impairment, the

11   claimant must establish that he satisfies each element of the listed impairment in

12   question.  See Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d

13   967 (1990); Tackett, 180 F.3d at 1099.  To "equal" a listed impairment, a plaintiff

14   "must establish symptoms, signs, and laboratory findings 'at least equal in severity

15   and duration' to the characteristics of a relevant listed impairment, or, if a claimant's

16   impairment is not listed, then to the listed impairment 'most like' the claimant's

17   impairment." Tackett, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526).

18        Here, the ALJ determined that plaintiff did not meet or equal the requirements

19   of any of the subsections of Listing 1.04 (i.e., Listings 1.04A, 1.04B, and 1.04C).

20   (See AR 33.)[3]  Specifically, the ALJ found that there was insufficient evidence of

21

22   _____

23        [2](...continued)
     which party is entitled to judgment under the standards set forth in 42 U.S.C. §

24   405(g).

25        [3]      Listing 1.04 describes disorders of the spine (e.g., herniated nucleus

26   pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc

27   disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root
     (including the cauda equina) or the spinal cord.

28                                                      (continued...)

                                          2

nerve root compromise with associated neurological deficits and/or the requisite functional loss (e.g., inability to ambulate effectively or sustained disturbance of gait and station, or the inability to perform fine or gross manipulations).[4] (See AR 33.)

Plaintiff contends that the ALJ's step three finding was not supported by substantial evidence or based on legal error in two respects. (See Jt Stip at 4-5.) First, plaintiff contends that the ALJ's finding that plaintiff did not **meet** the requirements of Listing 1.04 was not supported by substantial evidence. (See Jt Stip at 5.) However, plaintiff has not specifically explained how this was so, and has not specifically addressed the evidentiary deficiencies the ALJ found. For example, plaintiff has pointed to no evidence of nerve root compromise.

_____

[3](...continued)

Listing 1.04A specifically requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing 1.04B specifically requires evidence of "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours."

Listing 1.04C specifically requires evidence of "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."

[4]      The Court disagrees with the ALJ's apparent assumption that all of the subsections of Listing 1.04 required plaintiff to establish functional loss. See Cinatl v. Astrue, 2011 WL 1743408, at *12-*14 (N.D. Ill. May 6, 2011) (noting that Listing 1.04C expressly requires functional loss but analyzing legislative intent to conclude that the requirement did not apply to Listing 1.04A). However, this is not dispositive because the Court finds that plaintiff failed to establish that he met or equaled the requirements of Listing 1.04 for other reasons.

3

1    Second, plaintiff contends that the ALJ's finding that plaintiff did not **equal**
2    the requirements of Listing 1.04 was erroneous because the ALJ did not explain her
3    equivalency finding and did not obtain the testimony of a medical expert to determine
4    equivalency. (See Jt Stip at 5.) However, the ALJ was not required to do either of
5    these things because plaintiff made no effort to establish equivalence. See Burch v.
6    Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the
7    combined effects of a claimant's impairments or compare them to any listing in an
8    equivalency determination, unless the claimant presents evidence in an effort to
9    establish equivalence."); Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2005) (ALJ's
10   failure to consider equivalence was not reversible error because the claimant did not
11   offer any theory, plausible or otherwise, as to how his impairments combined to equal
12   a listed impairment).

13

14   **B.    Reversal is not warranted based on the ALJ's alleged failure to properly**
15        **develop the medical record (Disputed Issue No. 2).**

16   Disputed Issue No. 2 is directed to the ALJ's failure to obtain the surgical
17   report of plaintiff's 2003 laminectomy. (See Jt Stip at 8.)

18   It is well-established that the ALJ has a special duty to fully and fairly develop
19   the record and to assure that the claimant's interests are considered, and that this
20   special duty exists even when the claimant is represented by counsel. See Brown v.
21   Heckler, 713 F.2d 441, 443 (9th Cir. 1983). "An ALJ's duty to develop the record
22   further is triggered . . . when there is ambiguous evidence or when the record is
23   inadequate to allow for proper evaluation of the evidence." See Mayes v. Massanari,
24   276 F.3d 453, 459-60 (9th Cir. 2001).

25   Here, although the record does not include the surgical report of plaintiff's
26   2003 laminectomy, the record does include several references to the procedure and
27   physicians' observations of plaintiff's surgical scar. (See AR 321, 323, 326, 354,
28   421, 465.) However, in light of the ALJ's comment that "claimant has provided no

4

objective medical supporting his actual hemi-laminectomy procedure" (see AR 36),
plaintiff contends that the ALJ failed to fully develop the record because she did not
ask plaintiff's representative about the surgical report nor obtain the surgical report
herself.   Plaintiff further contends that the surgical report was significant and
probative because it related to his condition before his date last insured (i.e., March
30, 2004) and because it played a role in the ALJ's adverse credibility determination.
(See Jt Stip at 8.)

Contrary to plaintiff's assertion, the ALJ did give notice to plaintiff and his
representative that the surgical report was missing by observing at the hearing that
she had not seen the surgical report (see AR 74) and leaving the record open after the
hearing for additional evidence (see AR 90).   This fulfilled the ALJ's duty to fully
develop the record.   See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)
("The ALJ may discharge this duty in several ways, including: subpoenaing the
claimant's physicians, submitting questions to the claimant's physicians, continuing
the hearing, or keeping the record open after the hearing to allow supplementation of
the record."); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (holding that ALJ
satisfied any duty to develop record by requesting additional records from claimant
and her counsel, and by keeping post-hearing record open for supplemental medical
evidence).

In any event, the surgical report was not significant and probative for the
reasons plaintiff contends.   First, it is unlikely that the surgical report was necessary
for proper evaluation of the evidence because the record was already well-developed
regarding plaintiff's functional abilities around the time of the surgery.   There was no
ambiguity in the record on this issue.   (See AR 321, 323, 326, 354, 421, 465.)
Second, contrary to plaintiff's contention, the surgical report was not a basis for the
ALJ's adverse credibility determination.   Rather, the ALJ's decision clearly indicates
that, notwithstanding the ALJ's comment that plaintiff had not provided the surgical
report, the ALJ made a finding based on the record that plaintiff did have the

5

laminectomy in 2003.  (See AR 35.)

**C.    The ALJ failed to make a proper adverse credibility determination with respect to plaintiff's excessive pain testimony (Disputed Issue No. 3).**

Disputed Issue No. 3 is directed to the ALJ's adverse credibility determination with respect to plaintiff's subjective symptom testimony.  (See Jt Stip at 12-14.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).

Here, plaintiff testified that he could not work because of severe pain in his back radiating to his lower extremities and further testified that he does not perform chores and suffers from depression.  (See AR 79-80.)  Plaintiff also completed an Exertional Daily Activities Questionnaire in which he stated that as a result of his pain, he was unable to sit, stand, or walk for extended periods of time.  (See AR 274.)  The ALJ found that, although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not

credible to the extent they were inconsistent with the ALJ's RFC assessment.[5]  (See AR 34.)

In support of this adverse credibility determination, the ALJ preferred four reasons. (See AR 35-38.) First, the ALJ noted without elaboration that "the objective clinical findings do not support the extreme allegations alleged."  (See AR 35.) Under Ninth Circuit jurisprudence, a lack of objective medical support may be a legally sufficient reason to discount a claimant's subjective symptom testimony, but the ALJ must specifically explain how the evidence undermines the testimony.  The ALJ did not do so here.  See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying 'what testimony is not credible and what evidence undermines the claimant's complaints.'") (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)), cert. denied, 552 U.S. 1141 (2008); Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989) ("In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision.").

Second, the ALJ noted that plaintiff had not taken any narcotic based pain relieving medications in spite of the allegations of quite limiting pain.  (See AR 36.) To the contrary, the record shows that plaintiff was prescribed Vicodin for his back pain.  (See AR 455.)   Moreover, to the extent that plaintiff did not receive regular treatment for his pain, he gave an uncontested explanation at the hearing that he did not have insurance and could not afford treatment (see AR 71, 76).   See also Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999) (ALJ's finding that claimant did not require strong analgesic medication was not a clear and convincing reason where claimant established that he could not afford it).

---

[5]     The ALJ determined that plaintiff had an RFC for light work with additional exertional limitations.  (See AR 33.)

1      Third, the ALJ noted that plaintiff's complaints were consistent with the ALJ's
2  RFC determination for light work and that plaintiff had not alleged symptoms and
3  limitations that would preclude performance of all work.  (See AR 37.)  To the
4  contrary, plaintiff's complaints were inconsistent with an ability to work: plaintiff
5  alleged that he could not walk one block, could not lift any weight, and could not
6  finish any chores.  (See AR 274-77.)

7      Fourth, the ALJ noted that plaintiff's complaint of depression was not credible
8  because his treatment had been essentially routine and/or conservative in nature, he
9  had not been referred to a mental health professional, he had no history of psychiatric
10  hospitalizations, and he had not evinced serious clinical signs of a mental impairment.
11  (See AR 38.)  However, the record shows that plaintiff did receive some psychiatric
12  treatment for a diagnosis of depression (see AR 454, 456) and that plaintiff was
13  referred to a mental health professional (see 454).  The Court also notes that the
14  ALJ's reasoning fails to account for the uncontested fact that plaintiff lacked the
15  resources to obtain regular psychiatric treatment (see AR 71) and the fact that
16  plaintiff never alleged that his depression was the primary basis for his disability;
17  rather, plaintiff alleged disability primarily due to his back condition.  Under the
18  circumstances, the Court finds that the ALJ's rationale of the allegedly conservative
19  nature of plaintiff's treatment for depression, the lack of history of psychiatric
20  hospitalization, and the lack of serious clinical signs of a mental impairment did not
21  constitute a clear and convincing reason to discount plaintiff's excessive pain
22  testimony.

23      The Court therefore finds and concludes that reversal is warranted here because
24  none of the reasons given by the ALJ constituted a clear and convincing reason for
25  rejecting plaintiff's excessive pain testimony.

26

27  **D.**    **The ALJ failed to make a proper adverse credibility determination with**
28        **respect to the lay testimony of plaintiff's mother (Disputed Issue No. 4).**

1    Disputed Issue No. 4 is directed to the ALJ's failure to address the testimony
2    of plaintiff's mother, Mrs. Bagdoyan. (See Jt Stip at 18-19.)

3    The law is well-established in this Circuit that lay witness testimony as to how
4    a claimant's symptoms affect the claimant's ability to work is competent evidence and
5    cannot be disregarded without providing specific reasons germane to the testimony
6    rejected. See, e.g., Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Smolen,
7    80 F.3d at 1288-89; Dodrill, 12 F.3d at 919.

8    Here, plaintiff's mother, Mrs. Bagdoyan, testified at the hearing that plaintiff
9    "cannot do anything," cannot wake up in the morning, cannot sleep at night, and had
10   no feeling in his thumb. (See AR 87-89.) Since the ALJ disregarded Mrs.
11   Bagdoyan's testimony without providing any reasons, the ALJ erred under Ninth
12   Circuit jurisprudence.

13   The Commissioner argues that any error in the ALJ's failure to explicitly
14   address Mrs. Bagdoyan's testimony was harmless because the ALJ validly rejected
15   all of the limitations described by Mrs. Bagdoyan in discussing plaintiff's testimony.
16   (See Jt Stip at 20.) However, the Court has found that the ALJ failed to validly reject
17   plaintiff's excessive pain testimony. Therefore, Molina v. Astrue, 674 F.3d 1104,
18   1122 (9th Cir. 2012) (ALJ's failure to provide specific reasons for rejecting lay
19   testimony was harmless error where testimony did not describe any more limitations
20   than those plaintiff herself described, which the ALJ validly rejected), is not
21   applicable here. This also is not an instance where the Court "can confidently
22   conclude that no reasonable ALJ, when fully crediting the testimony [of Mrs.
23   Bagdoyan], could have reached a different disability determination." See Stout v.
24   Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006). Rather, if
25   Mrs. Bagdoyan's testimony about plaintiff's limitations was fully credited, a
26   reasonable ALJ could have concluded that plaintiff's impairments precluded plaintiff
27   from gainful employment. See Stout, 454 F.3d at 1056 (holding that ALJ's failure
28   to consider lay witness testimony about claimant's limitations was not harmless error

9

1  where a reasonable ALJ could find that such limitations would preclude gainful

2  employment).

3      The Court therefore finds and concludes that reversal is also warranted based

4  on the ALJ's failure to properly consider the lay testimony of plaintiff's mother.

5

6                          **CONCLUSION AND ORDER**

7      The law is well established that the decision whether to remand for further

8  proceedings or simply to award benefits is within the discretion of the Court. <u>See</u>,

9  <u>e.g.</u>, <u>Salvador v. Sullivan</u>, 917 F.2d 13, 15 (9th Cir. 1990); <u>McAllister v. Sullivan</u>,

10  888 F.2d 599, 603 (9th Cir. 1989); <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir.

11  1981). Remand is warranted where additional administrative proceedings could

12  remedy defects in the decision. <u>See, e.g.</u>, <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th

13  Cir. 1984); <u>Lewin</u>, 654 F.2d at 635. Remand for the payment of benefits is

14  appropriate where no useful purpose would be served by further administrative

15  proceedings, <u>Kornock v. Harris</u>, 648 F.2d 525, 527 (9th Cir. 1980); where the record

16  has been fully developed, <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986);

17  or where remand would unnecessarily delay the receipt of benefits, <u>Bilby v.</u>

18  <u>Schweiker</u>, 762 F.2d 716, 719 (9th Cir. 1985).

19      Weighing in favor of a remand for further administrative proceedings here is

20  the fact that this is not an instance where no useful purpose would be served by

21  further administrative proceedings. Rather, additional administrative proceedings

22  conceivably could remedy the defects in the ALJ's decision.

23      The Court is mindful of Ninth Circuit case authority holding that "the district

24  court should credit evidence that was rejected during the administrative process and

25  remand for an immediate award of benefits if (1) the ALJ failed to provide legally

26  sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that

27  must be resolved before a determination of disability can be made; and (3) it is clear

28  from the record that the ALJ would be required to find the claimant disabled were

                                    10

1   such evidence credited." See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004);
2   see also, e.g., Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S.
3   1038 (2000)[6]; Smolen, 80 F.3d at 1292; Varney v. Secretary of Health & Human
4   Servs., 859 F.2d 1396, 1399-1401 (9th Cir. 1988).   Under the foregoing case
5   authority, when this test is met, the Court will take the improperly discredited
6   testimony as true and not remand solely to allow the ALJ another opportunity to make
7   specific findings regarding that testimony.   This rule applies not only to a claimant's
8   improperly discredited excess pain and other subjective symptom testimony, but also
9   to a lay witness's improperly discredited testimony. However, in Connett v. Barnhart,
10  340 F.3d 871, 876 (9th Cir. 2003), the panel held that the "crediting as true" doctrine
11  was not mandatory in the Ninth Circuit.   There, the Ninth Circuit remanded for
12  reconsideration of the claimant's credibility where the record contained insufficient
13  findings as to whether the claimant's testimony should be credited as true.  See id.

14      Based on its review and consideration of the entire record, the Court has
15  concluded on balance that a remand for further administrative proceedings pursuant
16  to sentence four of 42 U.S.C. § 405(g) is warranted here.   Accordingly, IT IS
17  HEREBY ORDERED that Judgment be entered reversing the decision of the
18  Commissioner of Social Security and remanding this matter for further administrative
19  proceedings.[7]

21  DATED:  March 11, 2013

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

[6]    In Harman, the Ninth Circuit noted that this three-part test "really
constitutes a two part inquiry, wherein the third prong is a subcategory of the
second." Harman, 211 F.3d at 1178 n.7.

[7]    It is not the Court's intent to limit the scope of the remand.

11